# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>WAYNE WEBBER, )<br>)<br>Defendant. ) | Criminal No. 20-375<br>Judge Robert J. Colville |

## MEMORANDUM AND ORDER OF COURT

Presently before the Court is a "Motion of Defendant Wayne Webber for Reconsideration of His Detention and for Release on Bond" (ECF No. 343). Defendant requests that this Court review the order of detention pending trial issued by Magistrate Judge Cynthia Reed Eddy (Docket No. 149) and enter an order releasing him from pretrial custody with certain conditions. The Government filed a Response in opposition, arguing that this Court should affirm Judge Eddy's detention order (ECF No. 350) because Defendant has not overcome the presumption of detention and that Judge Eddy correctly held that by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, and by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance as required.

After careful consideration of the parties' positions and review of the record evidence, including the detention hearing transcript ("Transcript") (Docket No. 238) and the referenced Pretrial Services Report, Defendant's Motion is denied.

**I.     PROCEDURAL HISTORY**

On December 1, 2020, Defendant was charged at Count One in a two-count Indictment with violating Title 18, United States Code, Section 846, conspiracy to distribute 500 grams or

1

more of cocaine. (ECF No. 3). He was arrested, later arraigned, pled not guilty, and waived his detention hearing. (ECF Nos. 93, 98, 100). On December 23, 2020, Defendant filed a motion for a detention hearing. (ECF No. 142).

Judge Eddy held a detention hearing on January 6, 2021 and then entered a written order of detention pending trial. (Docket Nos. 148, 149). Judge Eddy found that the rebuttable presumption under 18 U.S.C. § 3142(e)(3) was triggered in this case based on the nature of the charges against Defendant, and Defendant had not introduced sufficient evidence to rebut the presumption. (Docket No. 149 at 2). She further found that the information presented at the detention hearing established by clear and convincing evidence that there is no condition or combination of conditions which would reasonably assure the safety of the community if Defendant is released and that by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance as required. (*Id*.). Along with Judge Eddy's findings made on the record at the hearing, she specified in the order the following reasons for detention: the weight of the evidence against Defendant is strong; he is subject to a lengthy period of incarceration if convicted; his prior criminal history; his participation in criminal activity while on probation, parole or supervision; his history of alcohol or substance abuse; and his prior violations of probation, parole or supervised release. (*Id.* at 2-3).

On February 16, 2021, a federal grand jury returned the Superseding Indictment in this case, however, the charges against Defendant remained the same. (ECF No. 191).

On May 10, 2021, Defendant moved this Court to review the detention order and requests that he be released pending trial. (Docket No. 343). In summary, Defendant submits that his role in the charged conspiracy was limited, that he suffers from serious medical issues (Crohn's disease, obstructive sleep apnea ("OSA"), asthma and TIAs, and a diagnosis of MRSA in 2009) and that

his conditions, including the need for a CPAP machine, are not being met with appropriate support by the Indiana County Jail. Defendant avers that he has difficulty keeping the CPAP in safe operating conditions and that the Jail refuses to provide him with filters and that he has had to use the same filter for several months. He also states that his conditions place him at significantly higher risk should he be exposed to COVID-19 than is faced by the general population. (ECF No. 343 at 1-2). Defendant states his family fears it will lose their home and become homeless unless he is able to return to work, at least until such time that he may have to serve a sentence of imprisonment. Defendant further states he could find full-time employment and reside with his family in Duquesne, Pennsylvania if released from the Indiana County Jail. (ECF No. 343 at 3).

The Government opposes Defendant's request for release pending trial. (Docket No. 350). The Government contends given Defendant's indictment for involvement in drug trafficking, the weight of the evidence against him, and his history and characteristics, the detention order should stand. After careful consideration, the Court will deny his motion.

## II.     ANALYSIS

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq*. (the "BRA"), governs release and detention pending judicial proceedings. Under the BRA, a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. §3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. §3142(e). Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and

the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies, among others, to cases, as here, in which there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

The charges against Defendant, as summarized *supra*, raise the rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(3). A defendant may rebut the presumption in §3142(e) by producing "some credible evidence ... that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light. *United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (citation omitted). If the defendant rebuts the presumption, the burden of persuasion remains with the government. *Id.* Thus, the government bears the burden of proving that defendant presents either a risk of flight or a danger to the community.

A defendant may rebut the presumption by presenting "some credible evidence" to support "his contention that he will appear and will not pose a threat to the community," if released. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (citation omitted). "To this end, the Court should consider the four factors listed [in 18 U.S.C. § 3142(g)], and if at the end of this analysis, Defendant rebuts the presumption, the burden shifts back to the Government to prove Defendant poses a threat of flight and a threat of dangerousness to the community. *United States v. Wooley*,

Crim. No. 11-158, 2012 WL 3245472, at *2 (W.D. Pa. Aug. 7, 2012) (citing *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986)).

The four factors set forth in 18 U.S.C. § 3142(g), to be considered when determining whether a defendant should be detained pending trial, are:

> 1) the nature and circumstances of the offense charged, including . . . whether they involve a controlled substance;
> 2) the weight of the evidence against the person;
> 3) the history and characteristics of the person, including --
>    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>    (B) whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
> 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g). In addition, Section 3142(i) also provides a "limited safety valve provision" allowing a court to re-examine a detention decision. *See United States v. Washington-Gregg,* No. 19-331, 2020 WL 1974880, at *5 (M.D. Pa. Apr. 24, 2020). Under this section, a Court may grant temporary release if it "determines such release to be necessary for preparation of the person's defense or for another compelling reason." The defendant bears the burden of making an "individualized and specific showing of a compelling reason[ ]" for release. *United States v. Brown,* No. 19-259, 2020 WL 2036715, at *4 (M.D. Pa. Apr. 28, 2020). "[C]ourts have used this provision sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hajiev*, 460 F. Supp.3d 553, 555 (E.D. Pa. 2020) (internal quotations and citation omitted).

Where risk of flight is at issue, the Government must prove that detention is appropriate, due to risk of flight, by a preponderance of the evidence. *United States v. Himler*, 797 F.2d 156,

5

161 (3d Cir. 1986). Where dangerousness is at issue, the Government must prove, by clear and convincing evidence, that no combination of conditions will reasonably assure the safety of any person or the community at-large. *United States v. Perry*, 788 F.2d 100, 106, 114 (3d Cir. 1986)

A.  18 U.S.C. § 3142(g) Factors as Applied to Defendant

1. *Nature and Circumstances of the Offenses*

Defendant is charged with serious drug violations. Testimony about the nature and circumstances of the offenses was obtained from FBI Task Force Officer Zachary Zvozza, who testified as follows. (ECF No. 238, hereinafter "Tr." at 24). The indictment against Defendant is one of four related indictments, and Defendant was an associate of co-defendant Anthony Peluso, and was his source of supply. *Id*. Evidence was obtained through a Title III wire intercept of Peluso's telephone, and a call was intercepted between Defendant and Peluso wherein Defendant:

> was talking to Anthony Peluso about how he found a plug, meaning a source of supply, with 100%, referring to the highest quality of cocaine. Mr. Webber further told Anthony Peluso that he obtained three ounces. Peluso tells Webber that he wanted to purchase one-quarter of an ounce, which is 7 grams of cocaine. Webber tells Peluso that he paid $2,000 an ounce -- or for one ounce of cocaine, so Peluso could buy it from him for cost, which would have been $500. Anthony Peluso told Webber that he needed to make money, so he would buy it off of him for $550.

Transcript at 25. Defendant was one of multiple cocaine sources of supply for Peluso. *Id.*

In addition to this testimony the government offered a copy of the Indictment as a finding of probable cause and further, the findings of the Pretrial Services Report, which recommended detention on the basis that there is no condition or combination of conditions to reasonably assure the safety of the community.

The Court finds that Officer Vozza's credible testimony establishes that Defendant's criminal conduct involved trafficking cocaine, a serious offense that pose a threat to the community. This factor weighs inf avor of detention.

6

2. *Weight of the Evidence Against Defendant*

The Court finds that the evidence presented by the Government against Defendant with respect to the offenses charged is strong. It includes the testimony of law enforcement officer Zvozza, as described above, as well as the Title III wiretap evidence, where in Defendant and Peluso discuss Defendant supplying cocaine to Peluso for resale. This is strong evidence that a violation of 21 U.S.C. § 846 occurred.

3. *History and Characteristics of Defendant*

The Pretrial Services Report indicates that the defendant reported he has lived in the Western District of Pennsylvania his entire life and he has lived in a residence in Duquesne, Pennsylvania since March 2020. As to a release plan, the defendant advised that he would like to return to the residence he rented with his girlfriend, Melissa Streams. The defendant said that there are no firearms in the home and his girlfriend and her four children reside in the home with him. The defendant advised he is currently single. He divulged that he has been involved with Melissa Streams for the past three years. In addition, the defendant noted that he does not possess a valid U.S. passport and has never traveled outside of the United States. The defendant reported no history of military service. The defendant reported that in January 2020, he became sick and started receiving unemployment compensation. The defendant advised that just prior to his arrest for the instant federal offense he started his own contracting business. He said that he has not received any income from this business yet. The defendant said that he suffers from sleep apnea and requires a CPAP machine. He also advised that he suffers from asthma, Crohn's disease, and severe sciatica in his right leg. The defendant's girlfriend added that the defendant also suffers from high blood pressure. The defendant reported a history of depression and anxiety. The defendant advised that he does not take any medication for his mental health ailments.

The Pretrial Services report includes the following assessments. He poses a risk of nonappearance because of the offense charged and/or his conduct during the arrest for the instant offense, his mental health history, his criminal activity while under supervision, lack of verifiable, legitimate employment, his pretrial, probation, parole or supervised release status and compliance, and his criminal history. The Report further concluded he poses a risk or danger given the nature of the instant offense, his mental health history, his criminal activity while on supervision, a history/charge involving sex offense/abuse, his criminal history, his pretrial, probation, parle or supervised release status and compliance, his history/charge involving a child, and safety concerns for the community.

Defendant called two witnesses at the hearing. First, he called his girlfriend, Melissa Streams, who testified that she had four children and they have all lived with Defendant for three years. Tr. at 6, 14. Defendant is the primary means of support and father figure for her children, and she has no income of her own and relies on food stamps. *Id.* at 7. She did not know his income level or anything about the conduct alleged in the indictment. *Id.* at 11-12. She testified defendant used to drink alcohol but had stopped a year ago. *Id.* at 14. She confirmed his prior drug use. Should Defendant be released on bond with conditions, Ms. Streams would be willing to monitor his conduct to ensure his compliance with those conditions, and would not hesitate to contact law enforcement if he was violating the conditions imposed by the court. *Id.* at 9.

Second, Defendant called to the stand his father, Wayne Webber, a licensed electrician, who testified he was in the process of helping his son get electrical work and had been referring his own customers to Defendant. *Id.* at 17. He has daily contact with his son but was unaware of any alleged criminal activity. *Id.* at 15, 17. He testified if Defendant is released on bond, he would be willing to help monitor his conduct and make sure Defendant complies with any conditions set

8

by the Court. *Id.* at 17. He also stated a willingness to call proper authorities in the event Defendant behaved in an inappropriate manner. He acknowledged his son's prior drug problem and said he does not have a drug problem now. *Id.* at 17.

The Defendant presented a medical history summary which contains the following. Defendant suffers from sleep apnea, requires a CPAP, suffers from asthma, Crohn's disease, severe sciatica in one leg, depression and anxiety and a history of drug abuse. On the record before us, there is no indication that his medical needs are not being met by the Indiana County Jail.

Defendant's criminal history, as relied upon by Judge Eddy, includes the following drug-related convictions:

> 1. June 4, 1997 arrest for burglary and theft by unlawful taking for which he was sentenced on August 13, 1998, to 1 month 15 days to 3 months' imprisonment;
>
> 2. August 12, 1997 arrest for possession with intent to deliver a controlled substance and failure to keep record of firearms sale for he was sentenced on August 13, 1998, to 1 to 2 months' imprisonment;
> 3. November 6, 1997 arrest for two (2) counts of burglary, theft by unlawful taking, and receiving stolen property for which he was sentenced on August13, 1998, to 1 to 2 months' imprisonment;
> 4. November 9, 1997 arrest for three (3) counts of receiving stolen property, theft by unlawful taking, and criminal mischief for which he was sentenced on August 13, 1998, to 1 to 2 months' imprisonment;
> 5. January 8, 1998 arrest for four (4) counts of possession with intent to deliver a controlled substance and two (2) counts of criminal conspiracy for which he was sentenced on August 13, 1998, to 1 to 2 months' imprisonment;
>
> 6. June 2, 2001 arrest for possession of marijuana, use/possession of drug paraphernalia, driving while suspended, and driving at unsafe speed for which he was sentenced on March 26, 2002, to 6 months' probation;
>
> 7. February 3, 2003 arrest for aggravated indecent assault, indecent assault of person less 13 years of age, and corruption of minors for which he was sentenced on September 7, 2004, to 2 years 6 months to 5 years' imprisonment and 7 years' probation. On March 2, 2009, he was resentenced to 2 years 6 months to 5 years' imprisonment and 7 years' probation. According to the bond report, there were several violation of probation resulting in bench warrants;

8. September 2, 2003 arrest for theft by unlawful taking and unauthorized use of vehicles for which he was sentenced on November 19, 2014, to 1 to 2 years' imprisonment and 3 years' probation;

9. July 17, 2010 arrest for failure to comply with registration of sexual offender requirements for which he was sentenced on January 6, 2011, to 18 to 36 months' imprisonment;

10. May 27, 2013, arrest for failure to register with Pennsylvania State Police and Failure to Verify Address/Be Photographed (relating to his sex offender status) for which he was sentenced on February 24, 2015, to 11 months, 15 days to 23 months' imprisonment and 5 years' probation; and

11. August 2, 2019 arrest for disorderly conduct for which he was sentenced to costs and a fine, but a bench warrant was issued on October 21, 2020.

Based upon this information,1 detention appears warranted as to this factor of the statute. Defendant's robust criminal history suggests that he may not comply with conditions of release imposed by the court.

4. *Nature and Seriousness of the Danger Posed by Defendant's Release*

There is no doubt that this is a presumption case under the BRA. 18 U.S.C. §3142(e). And given the nature of the charges here, Defendant poses a danger to the community. Drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of very dangerous drugs like cocaine. *United States v. Atkins*, Crim. No. 15-87, 2015 WL 4920831 at *7 (W.D. Pa. Aug. 18, 2015) (citing *United States v. Gibson*, 481 F.Supp.2d 419, 423 (W.D. Pa. 2007) ("violence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs.")). Therefore, this final factor weighs strongly in favor of detention.

The Court agrees with Judge Eddy that Defendant did not introduce sufficient evidence to

---

[1] At the hearing, Defendant's counsel explained certain sex offender convictions have been reversed, calling into question whether he was subject to the sex offender reporting requirement. Regardless Judge Eddy correctly took this into consideration in rendering her decision.

rebut the applicable presumption that no conditions will reasonably assure the safety of the community, and even if he had, after considering the presumption and other factors, detention is warranted because the Government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.[2] In reaching these decisions, the Court has conducted an independent examination of the record evidence and balanced the four factors set forth in 18 U.S.C. §3142(g). The risk of recidivism while on pretrial release is a concern. Other than Defendant's assertion that he would comply with any conditions imposed, he has proffered no evidence that he has the potential to maintain a law-abiding life if released. *See Carbone*, 793 F.2d at 560.

To the extent Defendant argues he can be placed within the care of his girlfriend and/or with the aid his father, "the mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case." *United States v. Bey*, Crim. No. 15-87, 2015 WL 7176340, at *5 (W.D. Pa. Nov. 13, 2015). Judge Eddy rejected his request to be released given Defendant's recurrent criminal charges which compelled her to conclude that he would be a danger to the community if released. This Court is concerned that any third-party custodian may not be able to adequately supervise a defendant who is charged with serious drug trafficking offenses.

To the extent Defendant is requesting we permit his release pursuant to Section 3142(i), i.e. the "limited safety valve" provision, due to his asthma and other medical conditions, or even,

---

2   This Court exercises *de novo* review over the detention order entered by the magistrate judge. *See Delker*, 757 F.2d at 1394-95. No evidentiary hearing is required before this Court because the record was fully developed before Judge Eddy, and "[t]his court may make its independent determination" on the issue of pretrial detention "based solely upon the evidence introduced at the prior hearing." *United States v. Burgess*, No. 2:09-cr-150, 2009 WL 2038148 at *1 (W.D. Pa. July 8, 2009) (citations omitted). Consequently, the Court has considered the unofficial transcript of the proceedings before Judge Eddy, along with the referenced Pretrial Services Report.

to the extent he argues this is a compelling reason for his temporary release otherwise under the BRA, we find that current pandemic and risk of contracting COVID-19 also does not present a compelling reason for Defendant's temporary release. The Center for Disease Control and Prevention guidelines indicate that people with "moderate to severe asthma" must take extra precautions to avoid contracting COVID-19, including the advice from public health officials: washing hands, avoiding close contact, staying at least 6 feet from other people, and wearing mask. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html; (ECF 132 at 1). However, the CDC warnings address those who have been diagnosed with moderate to severe asthma, who may be at "higher risk of getting very sick"; there is no record evidence that Defendant suffers from anything more than mild asthma. There is no indication in the record that Defendant's medical needs are not being met at the ICJ.

In addition, Chief Judge Hornak's Administrative Order postponed all federal criminal trials scheduled to commence through September 30, 2021. Misc. No. 2:20-mc-394-MRH. In fact, this Court also issued Orders continuing its own in-person criminal proceedings, in most if not all of its criminal cases. This Court has done so, in part, to ensure the health and safety of Defendant (and all other defendants) in this case, by reducing Defendant's exposure to additional individuals in the community. This also diminishes the likelihood that this Defendant (and other defendants), while traveling to and from the jails for proceedings in the Federal Courthouse, becomes exposed to the virus, and then returns to the jails only to inadvertently spread the virus within the jail.

Even accepting as true all of the medical conditions which Defendant relies upon in his motion, these increased risk of contracting COVID-19 does not outweigh the original reason for his detention, i.e. that even if the rebuttable presumption is not met he is a danger to the community and no combination of conditions would assure his appearance and safety of the community.

### III. CONCLUSION

For the reasons detailed herein, the Court concludes that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released pending trial. Accordingly, Defendant's motion for review of detention order is denied.

An appropriate Order follows.

### ORDER OF COURT

AND NOW, this 21st day of June, 2021, for the reasons set forth in the Memorandum above, IT IS ORDERED that Defendant's Motion to Reconsider Pretrial Detention Order (Docket No. 343) is DENIED.

*s/ Robert J. Colville*
Robert J. Colville
United States District Judge

cc/ecf: All counsel of record